474

Guy H. JONES *v.* Francis T. DONOVAN

5-4474                                           426 S. W. 2d 390

Opinion delivered April 1, 1968
[Rehearing denied May 6, 1968.]

*Jones & Stratton,* for appellant.

*Francis T. Donovan,* pro se.

George Rose Smith, Justice. This is a dispute be-
tween two lawyers, practicing in Conway, about the di-
vision of a $14,605.33 attorneys' fee which they earned
in *T.I.M.E. Freight* v. *McNew,* 241 Ark. 1048, 411 S. W.
2d 500 (1967). When the present controversy arose the
bank that had been disbursing the proceeds of the *Mc-
New* judgment filed this bill of interpleader and depos-
ited the disputed funds in court. After a hearing the
chancellor directed that the two lawyers share the fee

equally. For reversal Jones contends that Donovan is entitled to only $5,000—the sum that the chancellor would have awarded Donovan if his fee had been determined on *quantum meruit*.

The testimony is not before us. Jones, in appealing, failed to bring up the testimony and filed instead a "stipulation," signed by his attorney only, in which Jones agreed that "the facts recited in the trial court's memorandum opinion are true and correct." Donovan did not sign that stipulation, but he has not insisted that the testimony be produced. That procedure enables us to state the facts in a few sentences.

Throughout a decade, ending about April, 1964, these two lawyers had worked harmoniously together in about a hundred tort cases. When either was employed in such a case he would engage the other's assistance as co-counsel. It does not appear that the division of the fees in those cases was ever fixed by a written agreement between the two men. It was, however, tacitly understood all along that every fee would be shared equally, regardless of whose office originated the case and regardless of the particular services contributed by each lawyer to the litigation.

For some reason not disclosed by the record, but apparently having to do with political differences, the two men discontinued their association in 1964. A year or so later Jones was employed in the *McNew* case. Before drafting the complaint he happened to meet Donovan in a hallway and asked him to take part in the case. Donovan accepted the offer. Nothing was said about how the fee would be divided if the litigation ended in success, as it did.

Counsel for Jones, in seeking to limit Donovan to a fee fixed by *quantum meruit*, presents a two-step argument: First, the chancellor found that there was no "implied contract" for the division of the McNew fee. Secondly, in the absence of a controlling contract, this court

(counsel insists) follows the minority rule by which the fee of the lawyer brought into the case is determined by *quantum meruit* rather than by the majority rule of equal division. Counsel, in insisting that we have adopted the minority rule, cites *Dudley* v. *Adams*, 227 Ark. 376, 298 S. W. 2d 701 (1957), and *Terral* v. *Poe*, 190 Ark. 346, 79 S. W. 2d 69 (1935).

The chancellor, in dividing the fee equally, took the position that the *Dudley* and *Terral* cases did not definitely commit us to either rule. There is much to be said for that view. In the *Dudley* case an express contract was found to exist; so the present question did not arise. In the *Terral* case the retained co-counsel was asserting a contract for only a fourth of the fee; so there was never any contention by either side that the fee should be divided equally.

We need not, however, decide the majority-minority rule question, because we find in the case at bar that there was a tacit agreement to share the fee equally. Although the chancellor, at the conclusion of the hearing, apparently made an oral finding that there was no implied contract between the two lawyers, in a supplemental written opinion he pretty well receded from that view and gave effect, we think properly, to the ten-year course of dealing between Jones and Donovan. In directing that the fee be shared equally the chancellor went on to say in his written opinion:

"This is supported by the general practice that existed between these two lawyers for ten years. It was logical for Donovan to conclude that this custom would continue. Senator Jones had a duty, I feel in equity, to advise Donovan to the contrary, if he did not so intend. Actually, I believe he so unconsciously intended till political differences reared its ugly head. I realize I held there was no implied contract."

There can be no doubt that the parties' prior course of dealing is to be considered in determining whether a

tacit but still actual contract comes into existence. Corbin, Contracts, § 97 (1963); *Southern Pub. Ass'n* v. *Clements Paper Co.,* 139 Tenn. 429, 201 S. W. 745 (1917). Justice Holmes put his finger on the point in *Hobbs* v. *Massasoit Whip Co.,* 158 Mass. 194, 33 N. E. 495 (1893). There the plaintiff, a trapper, had sent eel skins to the defendant, a manufacturing company, on four or five occasions. Although there was no contract between the two the defendant had accepted and paid for the skins. The litigation arose when the defendant received another batch of skins and kept them for some time before they were destroyed. In holding that the manufacturer was bound by contract to pay for the skins the court summarized the law in a sentence: "The proposition stands on the general principle that conduct which imports acceptance or assent *is* acceptance or assent, in the view of the law, whatever may have been the actual state of mind of the party." (Our italics.)

In resting our conclusion upon the existence of a contract we are not overlooking the parties' agreement to submit the case upon the chancellor's opinion, which included a statement that he had found no implied contract. That statement, however, was not so much a finding of fact as a conclusion of law stemming from facts already found. Needless to say, the parties' stipulation does not bind us to accept that conclusion of law, any more than it binds us to accept the chancellor's construction of the *Dudley* and *Terral* opinions. This must be true, for otherwise our appellate function in the case would be limited to that of placing an approving rubber stamp upon the chancellor's decree.

Affirmed.

HARRIS, C. J., dissents.

CARLETON HARRIS, Chief Justice, dissenting. As I interpret the record, the two attorneys stipulated that the facts recited by the trial court in its findings are correct. It is true that this stipulation was only signed by appel-

lant, but appellee, in his brief, makes clear (in my view) that he is, likewise, in agreement.

Among other things, the court found that there was no agreement, express or implied, between the two attorneys as to a division of the fee. On Page 25 of appellee's brief, though referring to another particular finding by the court, appellee states, "And, Jones and Stratton, have stipulated that these findings are true and correct." Accordingly, I am of the opinion that the parties have agreed that the trial court's fact findings were true and correct, and we therefore have no right to decide the litigation on the basis of an implied contract.

I respectfully dissent.