PHI KAPPA TAU HOUSING CORPORATION,
a/k/a PKT Housing; Rick Marcum, Individually
and as President of Phi Kappa Tau Housing Corporation;
and Anthony Capo, Individually and as Vice-President
of Phi Kappa Tau Housing Corporation *v.*
Matt WENGERT, Paul Wengert, and Angie Wengert

02-231                                        86 S.W.3d 856

Supreme Court of Arkansas
Opinion delivered October 24, 2002

The *Evans Law Firm, P.A.*, by: *Marshall Dale Evans*, for appellants.

*Conner & Winters, P.C.*, by: *John R. Elrod* and *Vicki Bronson*, for appellees.

DONALD L. CORBIN, Justice. This case arose from a landlord–tenant dispute after Appellant Phi Kappa Tau Housing Corporation (PKT) leased a house for its fraternity from Appellees Paul Wengert, Angie Wengert, and Matt Wengert. At the time of the lease, Appellant Rick Marcum was the fraternity's president, and Appellant Anthony Capo was its vice-president. PKT filed suit in the Washington County Circuit Court against Appellees for replevin, claiming that they had converted the fraternity's personal property. PKT also sought the return of the security deposit. Appellees filed a counterclaim against PKT, alleging that it had breached the lease agreement, and filed third-party complaints against Marcum and Capo, individually. The jury found in favor of PKT on its replevin claim and awarded it $8,500.00 for conversion of the property and $4,000.00 for its security deposit. The jury also found in favor of Marcum and

Capo on the third-party complaints against them, determining that they were not liable for any of the alleged damages. Finally, on Appellees' counterclaim against PKT, the jury found that the fraternity was liable to the Wengerts for $2,000.00 in damages.

At the conclusion of the trial, Appellants moved for an award of attorney's fees and costs, pursuant to the lease agreement and Ark. Code Ann. § 16-22-308 (Repl. 1999). The trial court denied the motion on the ground that neither Appellants nor Appellees were the prevailing parties. The trial court's ruling was based on the fact that although both sides had won their cases to a certain extent, neither had recovered anywhere near the amounts sought. The Arkansas Court of Appeals affirmed the denial of attorney's fees to PKT because its recovery was based on the tort of conversion, and attorney's fees are not recoverable in tort actions. *See Marcum v. Wengert*, 70 Ark. App. 477, 20 S.W.3d 430 (2000) (*Marcum I*). The court of appeals also held that the trial court did not abuse its discretion in denying attorney's fees to Marcum and Capo for prevailing on the third-party complaints.

Thereafter, we granted review of the court of appeals' decision, and we reversed. *See Marcum v. Wengert*, 344 Ark. 153, 40 S.W.3d 230 (2001) (*Marcum II*). We remanded the matter to the trial court to consider (1) awarding reasonable attorney's fees to all three Appellants under section 16-22-308 and Ark. R. Civ. P. 54, and (2) awarding reasonable attorney's fees and costs to PKT under its lease with Appellees. Upon remand, the trial court awarded PKT $1,750.00 in attorney's fees and $1,623.19 in costs. The trial court also awarded Marcum and Capo a total of $1,750.00 in attorney's fees. Appellants again seek reversal of the trial court's judgment. Because this is the second appeal of this matter in this court, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(7). We affirm the trial court's judgment, but we modify the award of costs.

## I. Award of Costs to PKT

For their first point for reversal, Appellants argue that the trial court erred in refusing to grant PKT all costs incurred in the litigation, as required by its lease agreement with the Wengerts.

During the hearing below, Appellants presented an itemized statement of their costs, totaling $2,907.19. The lion's share ($2,578.00) of their costs was for deposing each of the Wengerts. The trial court found that those deposition costs were excessive, and that one-half of the deposition costs, $1,289.00, is somewhat more reasonable. Based on this finding, the trial court reduced the deposition costs by half, and awarded total costs of $1,623.19. Appellants argue that the trial court's ruling is contrary to the plain language of the lease agreement. We agree.

As set out in this court's opinion in *Marcum II*, the lease agreement entered into between PKT and the Wengerts provided in part:

> 16. ATTORNEY'S FEES: In the case suit should be brought for recovery of the premises, or for any sum due hereunder, or because of any act which may arise out of the possession of the premises, by either party, the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee.

344 Ark. at 165, 40 S.W.3d at 237-38. In construing this provision, this court held that the language was very broad and that it "required a mandatory award of reasonable attorney's fees and costs to that party." *Id.*

■■ The trial court interpreted this lease provision as requiring an award of *reasonable* costs and *reasonable* attorney's fees. We disagree with this interpretation, because the word "reasonable" is only used to modify the term "attorney's fee." It is not used to modify the term "costs." To the contrary, a plain reading of the provision demonstrates that the amount of costs recoverable by the prevailing party are "*all* costs incurred in connection with such action[.]" (Emphasis added.) As this court stated in *Marcum II*, the words of a contract are to be taken and understood in their plain and ordinary meaning. *See also First Nat'l Bank v. Griffin*, 310 Ark 164, 832 S.W.2d 816 (1992), *cert. denied*, 507 U.S. 919 (1993). The plain language of the lease provides for an award of "all costs incurred in connection with" any action for recovery of the premises, or for any sum due under the lease, or because of any act arising out of the possession of the premises. Had the

parties wished to limit the recovery of costs to only those that are deemed reasonable, they could have done so by substituting the word "reasonable" for the word "all." Similarly, had the parties meant that only legal costs would be recoverable, as Appellees assert, they could have easily inserted the word "legal" between "all" and "costs." But that is not what the contract provides, and we will not read into it any such qualifying language.

Moreover, we are not persuaded by Appellees' reliance on Ark. R. Civ. P. 54(d)(2), to support their contention that deposition costs are not recoverable. In the first place, the trial court obviously found that deposition costs were recoverable under the lease, as he awarded PKT half of the total deposition costs. That finding is not clearly erroneous given the broad language of the lease agreement.[1] In the second place, Rule 54(d) and its provision of recoverable costs has no application to this issue because the parties have agreed, independently from that rule, that "all costs incurred in connection with" the litigation are recoverable. *See Griffin v. First Nat'l Bank*, 318 Ark. 848, 888 S.W.2d 306 (1994). Accordingly, we reject Appellees' argument that deposition costs are not recoverable under the lease.

The only remaining question is whether the costs requested by Appellants were incurred in connection with the litigation under the lease. Appellants urge that the proof was undisputed that the remainder of the costs sought by them were incurred in connection with the litigation. Appellees do not dispute this assertion. Moreover, the trial court never questioned that all the costs sought by Appellants were incurred in connection with the litigation. The trial court merely questioned the excessive costs of the depositions of the three Appellees. Accordingly, because there is no disputed issue of fact as to whether the requested costs were incurred in connection with the litigation, there is no need to remand this inquiry to the trial court. We thus modify the judgment to reflect that PKT is awarded the total amount of the costs incurred in connection with the litigation, which is $2,907.19.

---

[1] Appellees did not cross-appeal that part of the trial court's judgment awarding PKT one-half of its deposition costs under the lease agreement.

## II.   Reasonable Attorney's Fees

For their second point, Appellants argue that the trial court abused its discretion in awarding only $3,500.00 in attorney's fees even though the evidence showed that Appellants' attorney had worked in excess of 348 hours on the case, for a total fee of $51,525.50. Appellants argue that the award is not reasonable, under the language of the lease or under section 16-22-308. We disagree.

■■■ This court has often observed that there is no fixed formula in determining reasonable attorney's fees. *See, e.g., Newcourt Fin., Inc. v. Canal Ins. Co.*, 341 Ark. 452, 17 S.W.3d 83 (2000) (*per curiam*); *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990). However, a court should be guided in that determination by the following long-recognized factors: (1) the experience and ability of the attorney; (2) the time and labor required to perform the service properly; (3) the amount in controversy and the result obtained in the case; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged for similar services in the local area; (6) whether the fee is fixed or contingent; (7) the time limitations imposed upon the client in the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney. *Id.* Due to the trial judge's intimate acquaintance with the record and the quality of service rendered, we recognize the superior perspective of the trial judge in assessing the applicable factors. *Id.* Accordingly, the amount of the award will be reversed only if the appellant can demonstrate that the trial court abused its discretion. *Marcum II*, 344 Ark. 153, 40 S.W.3d 230; *Boatmen's Trust Co. v. Buchbinder*, 343 Ark. 1, 32 S.W.3d 466 (2000).

During the hearing below, the trial court received into evidence an affidavit submitted by Appellants' attorney, Marshall Dale Evans, reflecting that the total billing for legal time was $51,525.50. Attached to the affidavit was an itemized statement showing how many hours were spent on particular services, such as reviewing documents, consulting with the client, deposing witnesses, etc. The trial court also heard testimony from Evans,

Appellees' attorney John R. Elrod, and two local attorneys, Lamar Pettus and Jim Rose. Evans testified that he initially agreed to take the case on a contingency. He stated that he told his clients that if the Wengerts filed any counterclaims, he would be working on an hourly basis. Evans explained that "the employment arrangement was assessed as one that could have been a contingency case initially with the proviso that if it develops into a counterclaim that has to be dealt with at that point and it becomes hourly on that portion of it." During cross-examination, Evans explained further:

> The replevin suit only was considered to be a — would have been considered to be a contingency case if there were no counterclaims. Yes, that was the agreement that was explained to the client but it also was, as frequently we do say, if a counterclaim is filed then that will be on an hourly rate.

Evans defended the number of hours spent on the case as being due to the protracted nature of the suit once the counterclaims and third-party complaints were filed.

Jim Rose testified that from his review of the case file and Evans's itemization of time, he felt that the number of hours spent on the case was appropriate in light of the counterclaims filed by the Wengerts. Rose also stated that the fee sought by Evans was reasonable.

In contrast, Lamar Pettus testified that from his review of the case file and the itemization, he believed that the number of hours spent in preparation for trial was excessive. Pettus stated that the hourly rate of $125.00 to $150.00 was reasonable, but that the overall fee was high. Pettus explained that "had I anticipated the counterclaims and the difficulty or possible difficulty of the case I would have put this case in the range of somewhere between ten thousand dollars and thirty-five thousand[.]" When asked whether he could determine from the itemized statement and the case file the amount of money spent defending Marcum and Capo on the counterclaims, Pettus stated that he estimated about $18,000.00 was spent defending the individuals. The trial court then interjected a question as to how Pettus arrived at that figure from the itemization offered by Evans, given that most of the

entries do not detail who benefitted from any particular legal service. Pettus explained how he arrived at the figure, but he cautioned that his conclusion was a guess at best.

Following the hearing, the trial court issued a letter to the parties detailing his decision. In that letter, the trial court determined that a reasonable amount of attorney's fees would be $3,500.00, with one-half going to PKT and the other half going to Marcum and Capo. Applying the factors set out above, the trial court found that the case was relatively simple and straightforward and did not present any novel or difficult issues; that the attorneys involved are experienced and have enjoyed considerable successes in the past; that representation of Appellants did not preclude the Evans Law Firm from accepting other employment during the time; that the hourly rate of $125.00 to $150.00 was not excessive, but was at the high end of what was reasonable in the area; that an excessive amount of time was spent on trial preparation, reviewing records, and taking depositions; and that Appellants enjoyed limited success in the litigation, as the net award of $10,500.00 was less than ten percent of the amount sought. Additionally, the trial court concluded that the appropriate fee in this case should be based on a percentage (one-third) of the net award. The court based this conclusion on its finding that "the representation, in its entirety, was on a contingent fee basis[.]"

It is this last finding that Appellants take great issue with on appeal. They contend that the trial court's finding is in direct contrast to the evidence that was admitted during the hearing. Particularly, they point to Evans's testimony that although the initial replevin suit was undertaken on a contingency-fee basis, it was made clear to Appellants up front that if any counterclaims were filed, the representation in defense of those counterclaims would be on an hourly basis. Appellants' argument on this point is unpersuasive when the trial court's order is read in its entirety and viewed in light of the judge's comments during the hearing.

As set out above, Evans testified that the replevin case was initially taken on a contingency-fee basis, "with the proviso that if it develops into a counterclaim that has to be dealt with at that point *and it becomes hourly on that portion of it.*" (Emphasis added.)

Thus, the replevin suit and the counterclaims were supposed to be billed separately, using different methods. During Pettus's testimony, the trial judge indicated that he could not tell from the itemized billing statement which services were performed on the replevin claim and which were performed in defense of the counterclaims and third-party complaints. Pettus testified that he estimated that approximately $18,000.00 was spent on those defenses. However, Pettus stated that his estimate was really only a guess. The trial court's letter order reflects the difficulty in separating the services:

> The prosecution of the original claim against the Wengerts and the defense of the third party claim are hopelessly intertwined and the plaintiff attorney's records have not segregated the legal work or costs associated with the different actions. Therefore, this court agrees with the testimony at the hearing, such that it is virtually impossible to accurately allocate the charges according to whether the time spent by the attorney, or costs incurred otherwise, were due to the prosecution or defense in this action.

The trial court elected to award a fee on a contingency basis because it was not clear from either the testimony or the documentary evidence how much of the 348 hours spent on the case was dedicated to the prosecution of the replevin case or the defense of the counterclaims and third-party complaints.

■ We cannot say based on the record before us that the trial court abused its discretion. We agree with the trial court that the itemized statement does not accurately separate the services. Indeed, we found only five entries, on March 28, 1996, April 11, 1996, March 25, 1998, April 17, 1998, and April 30, 1998, that definitively reflect services performed in defense of the counterclaim and third-party complaints. Those five entries total only 25.25 hours. Accordingly, Appellants have failed to demonstrate that the trial court abused its discretion in awarding attorney's fees in the amount of $3,500.00. In setting the amount, the trial court applied the eight factors previously set out by this court as pertinent to a determination of reasonable attorney's fees. Moreover, the trial court provided sound reasons, based on the evidence pro-

vided at the hearing, for ultimately basing the award on a percentage of the judgment. We thus affirm the trial court's determination of attorney's fees.

Affirmed as modified.