MILLWOOD-RAB MARKETING, INC. *v.*
James R. BLACKBURN, *et al*

CA 05-1259                                                    236 S.W.3d 551

Court of Appeals of Arkansas
Opinion delivered May 24, 2006

*Wilson, Walker & Short*, by: *Charles M. Walker*, for appellant.

*Miller, James, Miller & Hornsby, L.L.P.*, by: *Troy Hornsby*, for appellees/cross-appellants.

ROBERT J. GLADWIN, Judge. Appellees James R. Blackburn, Dale Booth, Jodie Carroll, David Gregory, Jerry H. Griffin, Bobby Hanson, Larry A. Henry, Harold Kite, Walter E. McCarey, Ricky McDaniel, Gerald S. Smith, Lagafaatasi Tupua, Robert W. Van Hoy, Jon H. Ward, Don A. Washington, Jerry S. Wright, and Kathryn Young filed a complaint in the Little River County Circuit Court against appellant Millwood-RAB Marketing, Inc., d/b/a Millwood Landing Golf and RV Resort (hereafter "Millwood-RAB") as successor in interest to Yarborough Landing Resort, Inc., alleging breach of contract regarding their membership agreements. In an order entered on August 13, 2004, the trial court granted the plaintiffs' motion for partial summary judgment as it pertained to appellees Blackburn, Gregory, McCarey, Tupua, Ward, Washington, and Young but denied the motion as to appellees Booth, Carroll, Griffin, Hanson, Henry, Kite, McDaniel, Smith, Van Hoy, and Wright. In its order, the trial court found that Millwood-RAB had assumed the membership agreements from its predecessors in interest and had materially breached the contracts of the appellees who were granted partial summary judgment. The trial court reserved the issue of damages and an attorney's fee. In its final order entered on July 22, 2005, the trial court granted summary judgment to the remaining appellees based on its finding that Millwood-RAB had breached those contracts as well. The trial court then set forth which appellees were entitled to unlimited and limited free guest green fees and which appellees were entitled to damages representing paid green fees and/or maintenance fees. In addition, the trial court awarded an attorney's fee of $6000. From that final order come this appeal and cross-appeal.

Millwood-RAB raises three points on direct appeal: (1) the governing documents allowed it to amend the rules and regulations of the resort concerning guest fees and to increase maintenance fees; (2) estoppel cannot, as a matter of law, form a basis for recovery; (3) the trial court erred in awarding an attorney's fee.

Appellees filed a cross-appeal, arguing that the trial court erred in awarding only a reduced attorney's fee to them as the prevailing parties and that this court should grant taxation of costs and award an attorney's fee for this appeal. We affirm on direct appeal and cross-appeal and deny appellees' request for taxation of costs and an attorney's fee.

Around 1967, Yarborough Landing Resort, Inc., formed a private country club and R.V. park in Little River County near Ashdown that was commonly referred to as the Millwood Country Club, Millwood Golf Course, and Millwood Landing. From 1986 through 2003, appellees, with the exception of appellee Carroll, either purchased their memberships directly from Yarborough or purchased them from an original member. They purchased either Charter 1 Memberships or Special Memberships, both of which expired after a term of 100 years. Appellees paid an initial membership fee plus annual maintenance fees and thereafter prepaid rent. Pursuant to the Charter 1 and Special memberships, members were entitled to either free green fees with an unlimited number of guests or a limited number of four guests each day. Those membership agreements included the following language:

> SAID Member(s) and their guests who accompany them to the Resort shall be entitled to free green fees at the Resort golf course during the term of their membership.

> Or:

> SAID Member(s) and their guests (Limited to 4 persons per day), who accompany them to the Resort shall be entitled to free green fees at the Resort golf course during the term of their membership.

Although it was not in writing, appellee Carroll received a Founders Membership, of perpetual duration, around 1986. He had been provided unlimited free green fees for guests since 1979.

Some members received an Assurance Certificate, containing the following language:

> This RIGHT TO USE with all its related privileges may be bequeathed by Grantees to whomever so desired as long as Grantees are in good standing with YARBOROUGH LANDING RESORT and said heirs shall be bound by all obligations of Grantees.

As noted above, certain appellees bought their memberships from original members of the resort. Those contracts contained the following language:

We . . . agree to accept full responsibility in maintaining all annual dues to Millwood Landing and will abide by all rules and guidelines as set forth by the Resort . . . . Millwood Landing reserves the right to re-assess annual dues at any time and the right to alter rules and guidelines of the resort whenever it is deemed necessary by the resort.

The membership agreements and transferred membership agreements also included such language as:

This right to use shall be subject to but not limited to the provisions of current YARBOROUGH LANDING RESORT member handbook of Rules and Guidelines; the annual maintenance fee levied by YARBOROUGH LANDING RESORT: and the YARBOROUGH LANDING RESORT Membership Agreement signed by Member(s).

And, under a section entitled Privileges of Membership:

As long as member is in good standing with Resort, he (she) along with his (her) immediate family residing at home will be entitled to use all existing and future facilities constructed by Resort . . . Member agrees to be bound by all rules and guidelines as set forth in Resort's Member Handbook of Rules and Guidelines, as it now exists and as it may from time to time be reasonably amended by Resort.

The introduction to the YARBOROUGH LANDING RESORT Membership Handbook of Rules and Guidelines contained language as follows:

THESE RULES AND GUIDELINES ARE SUBJECT TO CHANGE BY YARBOROUGH LANDING RESORT MANAGEMENT FOR THE BENEFIT OF THE MEMBERSHIP AS A WHOLE AND WITHOUT ENDORSEMENT OF INDIVIDUAL MEMBERS.

In addition, the handbook's summary provided:

As stated above, these rules are subject to change by the Resort Management or the Developer at any time for the benefit of the majority of the members consistent with the purposes or intent of the membership offering . . . .

Thereafter, Millwood Landing Golf & R.V. Resort Rules and Amended Resort Rules for Millwood Landing Golf and R.V. Resort, effective February 1996, provided that, "Members are responsible for any charges, actions, or damages caused by their guests or family members," "Guests may be assessed a fee for certain amenities at the resort. Please inquire at the resort for verification of amenity fees," and "Guests are welcome on a fee basis. See pro shop for current rates."

In April 2002, Millwood Landing, which had since been sold to Cactus Resort Properties III, LLC, was purchased by Millwood-RAB. In addition to assignment and assumption language in the purchase agreement itself, a separate document entitled ASSIGNMENT AND ASSUMPTION OF CON-TRACTS, AGREEMENTS AND INTANGIBLES contained the following language:

> In accepting this Assignment, Buyer: (i) expressly assumes and shall perform all obligations of Seller with respect to the Contract Rights: and (ii) agrees to be bound under the Contract Rights to the same extent as Seller was bound by the Contract Rights prior to the Closing Date.

On October 11, 2002, Millwood-RAB suspended appellees' guest privileges and began charging guests for green fees. Appellees filed a complaint alleging breach of contract on September 8, 2003. In April 2004, appellees filed a motion for partial summary judgment to be followed by further fact finding regarding damages and an attorney's fee. In May 2004, Millwood-RAB filed a motion for summary judgment.

In an order entered on August 13, 2004, the trial court granted partial summary judgment to appellees Blackburn, Gregory, McCarey, Tupua, Ward, Washington, and Young. The trial court found that Millwood-RAB had assumed the contracts and concluded that Millwood-RAB could not modify the provision for free guest green fees by changing the rules and guidelines of the resort because that provision was part of the consideration for signing the contracts. The trial court reserved the issue of damages and an attorney's fee.

At a hearing held on April 26, 2005, David Meredith, a lawyer and one of the two owners of Millwood-RAB, testified that he was involved with the acquisition of the company from Cactus Resort. He stated that the deal finally closed at the end of

May 2002, but that Cactus Resort had failed to provide him with complete documentation on the different memberships. Meredith stated that the owners actually took over the resort in mid-June 2002, and they noticed that members were bringing free guests on a frequent basis. Meredith testified that, "It was not going to be financially viable to continue the operation that way." He said that almost immediately Millwood-RAB started the policy of allowing guests to play for free on the day they were there but notifying them that the free-guest policy would not be honored in the future. Meredith stated that, although Millwood-RAB formulated a letter of notification, it was not mailed because the owners had no idea who to notify because of the incomplete documentation on the memberships. Meredith stated that the owners structured the maintenance fees according to the members' use of the golf course because that would be more fair. He stated that the prior maintenance fee was sixty-nine dollars per quarter and that it was increased to $405 per quarter.

In its final order entered on July 22, 2005, the trial court noted its earlier granting of partial summary judgment on liability to seven appellees.[1] The trial court further found that Millwood-RAB was contractually bound to and in material breach of the membership agreements as to the remaining appellees. Specifically, the trial court ruled from the bench that Yarborough Landing, as Millwood-RAB's predecessor in interest, had used the free green fees for guests as a "hook" to get appellees to buy a membership. In its order, the trial court set forth the green fees to which appellees were entitled and provided that certain appellees were entitled to damages representing green fees and maintenance fees they had paid. Finally, the trial court awarded an attorney's fee of $6000.

*Direct Appeal*

Millwood-RAB argues that the trial court ignored those portions of the membership agreements that incorporated by reference the resort's rules and guidelines and that the four corners of all of the documents taken together clearly indicate that the rules, including those involving fees, were subject to change. Millwood-RAB concedes that it was required to fulfill certain obligations with respect to the members but maintains that, by

---

[1] McCarey and Young were later dismissed from the action.

virtue of the assignment, it also acquired the right to impose certain obligations upon the members.

Normally, on a summary-judgment appeal, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Clarendon Nat'l Ins. Co. v. Roberts*, 82 Ark. App. 515, 120 S.W.3d 141 (2003). When parties file cross-motions for summary judgment, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *Id.* As a general rule, the filing by both parties of opposing motions for summary judgment will not warrant a court's granting either party's motion if indeed there exists a genuine factual dispute concerning a material issue. *Chick-A-Dilly Properties, Inc. v. Hilyard*, 42 Ark. App. 120, 856 S.W.2d 15 (1993) (citing *Schlytter v. Baker*, 580 F.2d 848, 849-50 (5th Cir. 1978)). When the parties proceed on the same legal theory and on the same material facts, however, the basis for the rule disappears. *Id.* Thus, cross-motions may be probative of the non-existence of a factual dispute when, as here, they demonstrate a basic agreement concerning what legal theories and material facts are dispositive. *Id.*

Where the meaning of a contract does not depend on disputed extrinsic evidence, the construction and legal effect of the contract are questions of law. *See Tunnel v. Progressive N. Ins. Co.*, 80 Ark. App. 215, 95 S.W.3d 1 (2003). On appeal from a trial court's determination of a purely legal issue, we must only decide if its interpretation of the law was correct.

The applicable rule of contract construction states that where two provisions of a contract conflict, the specific provision controls over a more general provision, as it is assumed that the specific provision expresses the parties' intent. *American Investors Life Ins. Co. v. Butler*, 76 Ark. App. 355, 65 S.W.3d 472 (2002). We agree with the trial court's interpretation of the membership agreements. It is unlikely that appellees, or the original members of the resort, would have agreed to buy a membership that featured limited or unlimited free green fees for guests if that provision could thereafter be eliminated by simply changing the rules regarding those fees. Both parties to the contract recognized the free green fees for guests as an attractive offer that was likely instrumental in motivating the members to buy a membership at the resort. Millwood-RAB could certainly change the rules and regu-

lations of the resort, but it could not retract a core provision of the membership agreements in doing so.

Next, Millwood–RAB argues that estoppel does not apply. Appellees had argued below that Millwood–RAB was estopped to claim that it was entitled to change the maintenance fees and charge guest fees because it did not immediately notify every member of the change and instead waited two or three months before making changes. Because appellees agree on appeal that estoppel does not apply and because the trial court's order does not indicate that it relied on the theory of estoppel, we will not address this point.

Finally, Millwood–RAB argues that the trial court erred in awarding an attorney's fee and that, alternatively, the fee was excessive. It is well settled that under Arkansas law, attorney's fees are awarded only when expressly authorized by a statute or rule. *Boatmen's Trust Co. of Ark. v. Buchbinder*, 343 Ark. 1, 32 S.W.3d 466 (2000). Arkansas Code Annotated section 16-22-308 (Repl. 1999) provides that the prevailing party in a civil action, including breach of contract, may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs. The decision to award attorney's fees and the amount of an award are discretionary determinations that will be reversed only if there was an abuse of discretion. *Buchbinder, supra.*

This court has often observed that there is no fixed formula in determining reasonable attorney's fees. *Phi Kappa Tau Housing Corp. v. Wengert*, 350 Ark. 335, 86 S.W.3d 856 (2002). However, a court should be guided in that determination by the following long-recognized factors: (1) the experience and ability of the attorney; (2) the time and labor required to perform the service properly; (3) the amount in controversy and the result obtained in the case; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged for similar services in the local area; (6) whether the fee is fixed or contingent; (7) the time limitations imposed upon the client in the circumstances; (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney. *Id.* Due to the trial judge's intimate acquaintance with the record and the quality of service rendered, we recognize the superior perspective of the trial judge in assessing the applicable factors. *Id.*

Here, appellees' attorney, Troy Hornsby, submitted an affidavit wherein he stated that he had been licensed to practice

law in Arkansas since 1995. He charged $150 per hour for his services and fifty dollars per hour for his legal assistant's time. According to Hornsby, his hourly rates were reasonable and customary for legal services in the area. He stated that he had, at that point, expended 83.7 hours in representing appellees, while his legal assistant had spent 2.3 hours, and that he expected to have expended 91.7 hours at the completion of his representation at the trial court level. Therefore, he requested $13,870, plus $100 for reasonable and necessary out-of-pocket expenses. In addition to the affidavit, Hornsby attached a copy of his firm's billing statement reflecting the various charges. Considering the relevant factors, we cannot say that the trial court abused its discretion in awarding a $6000 attorney's fee. Furthermore, we disagree with Millwood-RAB's contention that the fee was excessive given that appellees' total recovery was only $5242.72. As noted, there is no fixed formula in determining what is a reasonable attorney's fee. *See Wengert, supra.*

■ Millwood-RAB also relies on Ark. R. Civ. P. 54(e) for the proposition that the trial court's award was not proper because there was no stated basis for the award as it pertained to those appellees who received only declaratory relief and because appellees' request for an attorney's fee in its initial complaint cannot provide that basis. Rule 54(e) provides:

> (1) Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.

> (2) Unless otherwise provided by statute or order of the court, the motion must be filed and served no later than 14 days after entry of judgment; must specify the judgment and the statute or rule entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought.

Millwood-RAB argues that there was no such motion filed by appellees. In *State Auto Property & Cas. Ins. Co. v. Swaim*, 338 Ark. 49, 991 S.W.2d 555 (1999), our supreme court held that Rule 54(e) does not require a written motion for attorney's fees. That court also noted that an award of attorney's fees pursuant to Ark. Code Ann. § 16-22-

308 further obviates the need for a motion to be filed requesting the fees. Although certain appellees received only declaratory relief, the action was commenced as a breach-of-contract claim. Accordingly, the granting of an attorney's fee was proper under Ark. Code Ann. § 16-22-308.

### Cross-Appeal

■ Appellees argue that the trial court erred in awarding a reduced attorney's fee in light of the uncontradicted evidence that their attorney asserted entitlement to a reasonable and necessary attorney's fee of around $13,000. Again, there is no fixed formula in determining what is a reasonable and necessary attorney's fee. *Wengert, supra.* The trial court was able to observe and assess Hornsby's performance at trial, and after considering the affidavit Hornsby submitted, the trial court determined that an attorney's fee of $6000 was warranted. We simply cannot say that the trial court abused its discretion in awarding that amount.

■ Appellees also request that they receive taxation of costs pursuant to Sup. Ct. R. 6-7(a), (c), and/or (d), and they further request permission to petition this court for an attorney's fee incurred in the appeal of their case. Supreme Court Rule 6-7 provides:

> (a) Affirmance. The appellee may recover brief costs not to exceed $3.00 per page; total costs not to exceed $500.00.
>
> . . . .
>
> (c) Affirmed in part and reversed in part. The Court may assess appeal costs according to the merits of the case.
>
> (d) Imposing or withholding costs. Whether the case be affirmed or reversed, the Court will impose or withhold costs in accordance with Rule 4-2(b).

Appellees supplemented Millwood-RAB's Addendum with the affidavits of both parties' attorneys and the attorneys' billing statements consisting of fourteen pages. We, however, decline to award costs, as appellees would be entitled to such a paltry sum under (a); we fail to

see how the merits of the case would warrant an award of costs under (c); and appellees did not comply with Sup. Ct. R. 4-2(b)[2] to recover costs under (d).

Furthermore, appellees' request for an attorney's fee for this appeal pursuant to Ark. Code Ann. § 16-22-308 is denied. The cases relied upon by appellees are either inapplicable or have been overruled. In a per curiam opinion, our supreme court stated that Ark. Code Ann. § 16-22-308 permits trial courts, but not appellate courts, to assess attorney's fees. *See Mosley Mach. Co., Inc. v. Gray Supply Co.*, 310 Ark. 448, 837 S.W.2d 462 (1992).

Affirmed on direct appeal; affirmed on cross-appeal.

Motion for costs and attorney's fee denied.

GRIFFEN and NEAL, JJ., agree.

---

[2] Supreme Court Rule 4-2(b)(1) provides that in seeking an award of costs, counsel must submit a statement showing the cost of the supplemental abstract or Addendum and a certificate of counsel showing the amount of time that was devoted to the preparation of the supplemental abstract or Addendum.