2009 Ark. App. 442

**CROWN CUSTOM HOMES, INC., Appellant,**

v.

**BUCHANAN SERVICES, INC., Appellee.**

**No. CA 09–20.**

Court of Appeals of Arkansas.

May 27, 2009.

Nolan, Caddell & Reynolds, P.A., Rogers, by: Bill G. Horton, Fort Smith, for appellant.

The Mulkey Attorney's Group, P.A., by: Bruce L. Mulkey; Rogers, and The Kester Law Firm, by: Charles M. Kester and Dawn C. Egan, Fayetteville, for appellee.

KAREN R. BAKER, Judge.

Appellant, Crown Custom Homes, Inc., appeals from a decision by the Benton County Circuit Court in favor of appellee, Buchanan Services, Inc., in the amount of $2,100, plus attorney's fees of $2,000 and costs. Appellant asserts on appeal that the trial court erred in two respects: first, finding that appellant breached a contract, and second, in awarding attorney's fees. Appellant further asserted that there was no enforceable contract between the two parties and that there was no basis for a quasi-contract or promissory estoppel. We affirm the trial court's decision.

Appellant, Crown Custom Homes, Inc. (Crown), is a homebuilder. Appellee, Buchanan Services, Inc., provides soil analysis and surveys for builders, real estate companies, and others in the construction industry in Northwest Arkansas. Buchanan and Crown had an ongoing business relationship. Testimony showed that until the transaction at issue, Crown had done in excess of $100,000 worth of business with Buchanan.

Crown also participated in construction projects with other home builders. Particularly, Crown was participating in a construction project with Hollis Cunningham of Cunningham Contractors, LLC. During this particular construction project, Jerry Hawkins of Crown introduced Mr. Cunningham to Mr. Buchanan in a meeting that took place at Buchanan's office. Representatives of all three business entities were present at the meeting.

Following the meeting, a work order was issued and was faxed from Crown's place of business to Buchanan. Upon receipt, Buchanan began and completed the services pursuant to the work order. Testimony showed that the "original invoices were made to Jerry Hawkins care of Crown Custom Homes," and the bill for the services was sent to Crown. Crown did not remit payment for the services rendered by Buchanan. In September 2006, Hawkins directed Buchanan's bookkeeper, Kimberly Snyder, to send the invoice directly to Cunningham. She did, but despite Cunningham's statement that he had "relayed payment" of $2,000 and that he would send the balance in January 2007, Buchanan never received payment

from Cunningham. In March or April 2007, Buchanan sued Cunningham in Missouri for failure to pay. Due to a failure to obtain proper service, the suit was unsuccessful.

Ms. Snyder testified that when a survey was requested, she was typically only aware of the person requesting the survey and not necessarily informed of the name of the person who owned the lots. She first learned of the request for services at issue here when she received the fax from Crown. She testified as to the customary course of dealing between Crown and Buchanan. For example, during the years of doing business with Crown, she had received other orders from Crown via facsimile. She explained that it was customary for Buchanan to begin the work upon receipt of the faxed request. It was also customary to bill Crown for the services when completed.

She testified that Jerry Hawkins specifically told her that he was not going to pay for the surveys because Cunningham owed him money and he "was not paying any more money for Cunningham lots." This was the first instance where Crown had not paid an invoice. She based her belief that Crown was responsible for the invoices on the fact that she received a fax from Crown for the job and "that was how every other job had been billed, and [Crown] paid on every other job." On redirect, Kimberly testified that when the surveys at issue were completed, she called Jerry Hawkins; she did not send the surveys to Cunningham.

Bobby Buchanan of Buchanan Services, Inc., testified that generally, when he has a new customer he has them fill out an order form. From that point on, the transactions were much more casual "by telephone, fax or whatever." He stated that Jerry Hawkins had always promptly paid his invoices, until the last transaction.

Even when Crown did not actually own the lots, when Buchanan received an order from Crown, he completed the work. Like Ms. Snyder, he generally did not know who owned the lots on which he was performing the surveys. On redirect, Buchanan testified that as of the day he met Mr. Cunningham, he did not know enough about him to take an order from him, and "Hollis did not make an order."

Jerry Hawkins testified that he introduced Hollis Cunningham and Bobby Buchanan at a meeting that took place at Buchanan's office. He testified that the lots at issue were owned not by Crown, but by Hollis Cunningham. It was "clear at the meeting that it was Hollis Cunningham's work," and he was only there to advise Cunningham. He denied ordering any lots surveyed or authorizing any work to be done on behalf of Cunningham. He admitted that he had submitted payment for the surveys on three of Cunningham's lots; however, he stated that it was inadvertent. When he discovered the mistake, he called Ms. Snyder and directed her to credit him for the payment. He also confirmed that he requested that Ms. Snyder send the bill to Mr. Cunningham for the work. He stated that Cunningham owed him approximately $300,000.

At the conclusion of the hearing, the trial court entered a decision in favor of appellee Buchanan, awarding damages in the amount of $2,100, attorney's fees in the amount of $2,000, and costs. This appeal followed.

In bench trials, the standard of review on appeal is whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Smith v. Eisen,* 97 Ark.App. 130, 245 S.W.3d 160 (2006) (citing *Anderson v. Stewart,* 366 Ark. 203, 234 S.W.3d 295 (2006)). We give due deference to the superior position of the trial court to de-

termine the credibility of the witnesses and the weight to be accorded their testimony. *Id.* Further, it is within the province of the trier of fact to resolve conflicting testimony. *Id.*

The issue before us is whether there was an agreement between Crown and Buchanan. The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, (5) mutual obligations. *Hot Spring County Med. Ctr. v. Arkansas Radiology Affiliates, P.A.,* 103 Ark.App. 252, 288 S.W.3d 676 (2008) (citing *Foundation Telecomm., Inc. v. Moe Studio, Inc.,* 341 Ark. 231, 16 S.W.3d 531 (2000)). The only element challenged by Crown is the element of mutual agreement.

In attempting to discern the real character of a transaction, the trial court should consider all of the written and oral evidence and focus on the intent of the parties in the light of all attendant circumstances. *Smith v. Eisen,* 97 Ark.App. 130, 245 S.W.3d 160 (2006) (citing *Bright v. Gass,* 38 Ark.App. 71, 831 S.W.2d 149 (1992)). In carrying out the true intent of the parties, the trial court properly looks beyond the mere form in which the transaction was clothed and considers all the facts and circumstances of the transaction, the conduct of the parties, and their relations to one another and to the subject matter. *Id.*

There can be no doubt that the parties' prior course of dealing is to be considered in determining whether a tacit but still actual contract comes into existence. *Jones v. Donovan,* 244 Ark. 474, 426 S.W.2d 390 (1968) (citing Corbin, *Contracts,* § 97 (1963); *Southern Pub. Ass'n v. Clements Paper Co.,* 139 Tenn. 429, 201 S.W. 745 (1918)). In *Jones,* the court stated:

Justice Holmes put his finger on the point in *Hobbs v. Massasoit Whip Co.,* 158 Mass. 194, 33 N.E. 495 (1893). There the plaintiff, a trapper, had sent eel skins to the defendant, a manufacturing company, on four or five occasions. Although there was no contract between the two the defendant had accepted and paid for the skins. The litigation arose when the defendant received another batch of skins and kept them for some time before they were destroyed. In holding that the manufacturer was bound by contract to pay for the skins the court summarized the law in a sentence: "The proposition stands on the general principle that conduct which imports acceptance or assent is acceptance or assent, in the view of the law whatever may have been the actual state of mind of the party."

*Jones,* 244 Ark. at 477, 426 S.W.2d at 392. An implied contract is proven by circumstances showing the parties intended to contract or by circumstances showing the general course of dealing between the parties. *Steed v. Busby,* 268 Ark. 1, 593 S.W.2d 34 (1980).

Whether there was mutual agreement between the parties was a question of fact for the trial judge to determine. Conclusions concerning the true intent of the parties primarily involve issues of fact, and the trial court's decision on such cases will not be reversed unless they are clearly erroneous. *Smith v. Eisen, supra.* Where the issue is one of the credibility of interested parties whose testimony is in direct conflict, we defer to the trial judge's decision. *Taylor v.George,* 92 Ark.App. 264, 212 S.W.3d 17 (2005) (citing *Estate of Sabbs v. Cole,* 57 Ark.App. 179, 944 S.W.2d 123 (1997)).

Here, the evidence established that the parties had done a significant amount of business with one another in the recent

past. Testimony further showed that it was customary for the parties to send work orders via facsimile, and likewise it was customary for Buchanan to complete the work upon receipt of the fax from Crown. It was undisputed that Buchanan's office informed Crown when the work was complete and sent Crown an invoice. Moreover, Mr. Buchanan testified that he was not well acquainted with Mr. Cunningham and would not have taken an order from him. The reason the order was taken via facsimile was because it was from Crown, with whom Buchanan had done a significant amount of business in the past. The trial court determined that the services would not have been performed by Buchanan but for the prior course of dealing between the parties. This finding was evidenced by the fax sent by Crown to Buchanan indicating that the survey was needed "asap" on one lot and requesting surveys on the other lots as well. Giving proper deference to the trial court to determine the credibility of witnesses, we hold that the evidence supports the trial court's finding, and thus, it was not clearly erroneous.

■ Crown also asserts that the writing was insufficient to satisfy the Statute of Frauds because the basis of this contractual claim rested upon an unsigned, faxed document that contained an inadequate description of "what was to be done and who was to pay, and how much was to be paid." Arkansas Code Annotated section 4–59–101 (Repl.2001) states in pertinent part:

(a) Unless the agreement, promise, or contract, or some memorandum or note thereof, upon which an action is brought is made in writing and signed by the party to be charged therewith, or signed by some other person properly authorized by the person sought to be charged, no action shall be brought to charge any:

. . . .

(6) Person upon any contract, promise, or agreement that is not to be performed within one (1) year from the making of the contract, promise, or agreement.

(b) No promise to pay a debt or obligation which has been discharged in bankruptcy shall be valid unless the promise is in writing.

(c) No action may be maintained to charge any person upon any promise made after full age to pay any debt contracted during infancy, unless the promise or ratification is made by some writing signed by the party to be charged with the promise or ratification.

(d)(1) No action may be maintained by or against any person or entity on any agreement to extend credit or to renew or modify existing credit in an amount greater than ten thousand dollars ($10,-000) or to make any other accommodation relating to such credit, unless the agreement is in writing and is signed by the party to be charged with the agreement, or the duly authorized agent of such party.

In support, Crown cites to *Van Dyke v. Glover*, 326 Ark. 736, 934 S.W.2d 204 (1996). However, *Van Dyke* can be distinguished from the case at hand, as the contract at issue in *Van Dyke* was a contract for the sale of real estate. Subsection (6) of Ark.Code Ann. § 4–59–101 is the only section that Crown argues applies. As mentioned above, subsection (6) pertains to any contract, promise, or agreement that is not to be performed within one (1) year from the making of the contract, promise, or agreement. Our supreme court has stated that a contract is not within the provisions of the Statute of Frauds where the proof demonstrates that it was capable of performance within one year, even if there was a possibility or even a probability that it might require a

longer time. *Township Builders, Inc. v. Kraus Constr. Co.*, 286 Ark. 487, 696 S.W.2d 308 (1985); *Johnson v. Harrywell, Inc.*, 47 Ark.App. 61, 885 S.W.2d 25 (1994). The contract at hand was clearly capable of being performed within one year. The surveys were ordered on January 20, 2006; the work was completed; and the invoice for the work was sent to Crown on April 17, 2006. Moreover, it is clear that a short time frame for completion of the work was anticipated, as Crown's request for the surveys stated that the survey needed to be performed on one particular lot "asap." Because the contract was, in fact, capable of being performed within one year, the Statute of Frauds is inapplicable.

In addition, Crown alleges that there was no account stated, and even if there was, it was entitled to prove that the partial payment for the survey done on two of the lots at issue was a mistake. An "account stated" has been defined as an account balanced and rendered with an assent to the balance, express or implied. *Jewell v. General Air Conditioning Corp.*, 226 Ark. 304, 289 S.W.2d 881 (1956); *Brown v. Southern Grocery Co.*, 168 Ark. 547, 271 S.W. 342 (1925). We have also held that an account stated is only *prima facie* correct, and may be impeached for fraud, mistake, or error. *Id.* (citing *Drake v. Howell*, 177 Ark. 1156, 9 S.W.2d 565 (1928)). The only evidence presented at trial to this effect was that Crown had "accidentally paid for some of the lots" at issue. Mr. Hawkins testified that when he discovered the mistake, he contacted Ms. Snyder and asked her to credit his account. He also informed her that she should bill Cunningham for the surveys on

those lots. We conclude that the evidence failed to show any dispute in the amount of the invoice, a mistake, or that Crown was responsible for anything less than the amount on the invoice.[1]

Finally, Crown alleges that the trial court erred in awarding fees that were "nearly the sum of the judgment." It is well settled that under Arkansas law, attorney's fees are awarded only when expressly authorized by a statute or rule. *Millwood–RAB Marketing, Inc. v. Blackburn*, 95 Ark.App. 253, 236 S.W.3d 551 (2006) (citing *Boatmen's Trust Co. of Ark. v. Buchbinder*, 343 Ark. 1, 32 S.W.3d 466 (2000)). Buchanan sought fees pursuant to Arkansas Code Annotated section 16–22–308 (Repl.1999), which states:

> In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

In awarding fees under the statute concerning attorney's fees in contract cases, the trial court has broad discretion on whether to award fees, and his decision will not be reversed absent an abuse of discretion. *First United Bank v. Phase II*, 347 Ark. 879, 69 S.W.3d 33 (2002); *Taylor, supra.* Alternatively, Crown argues that the fee should be "substantially reduced." However, the amount of fees awarded is also discretionary and will be reversed only if there was an abuse of

---

1. We note that Crown also presents the following argument: that there was no basis for recovery under a quasi-contract theory or promissory estoppel. However, a review of the record indicates that Buchanan recovered only under contract theory, and not quasi-contract or promissory estoppel, thus we do not address this argument.

discretion. *Millwood–RAB Marketing, supra.*

Our supreme court has often observed that there is no fixed formula in determining reasonable attorney's fees. *Phi Kappa Tau Housing Corp. v. Wengert,* 350 Ark. 335, 86 S.W.3d 856 (2002) (citing *Newcourt Fin., Inc. v. Canal Ins. Co.,* 341 Ark. 452, 17 S.W.3d 83 (2000) (per curiam); *Chrisco v. Sun Indus., Inc.,* 304 Ark. 227, 800 S.W.2d 717 (1990)). However, a court should be guided in that determination by the following long-recognized factors: (1) the experience and ability of the attorney; (2) the time and labor required to perform the service properly; (3) the amount in controversy and the result obtained in the case; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged for similar services in the local area; (6) whether the fee is fixed or contingent; (7) the time limitations imposed upon the client in the circumstances; (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney. *Id.* Due to the trial judge's intimate acquaintance with the record and the quality of service rendered, we recognize the superior perspective of the trial judge in assessing the applicable factors. *Id.*

Here, the trial court awarded $2,000 in attorney's fees to Buchanan. We cannot conclude that the $2,000 fee is unreasonable merely because the fee was nearly the sum of the judgment. Thus, we cannot find that the trial court abused its discretion in awarding the fee.

Affirmed.

ROBBINS, J., agrees.

HART, J., concurs.