AMERICAN INVESTORS LIFE INSURANCE COMPANY
*v.* Dianne Roxanne BUTLER

CA 01-533 65 S.W.3d 472

Court of Appeals of Arkansas
Division III
Opinion delivered January 23, 2002

*Skokos, Bequette & Billingsley, P.A.*, by: *Keith I. Billingsley*, for appellant.

*Watts & Donovan, P.A.*, by: *David M. Donovan*, for appellee.

Andree Layton Roaf, Judge. Dianne Roxanne Butler, appellee, sued appellant, American Investors Life Insurance Company ("American Investors"), her health insurance provider, to recover medical expenses that she incurred for a procedure known as high dose chemotherapy autologous stem cell transplantation ("HDC"), which was recommended by her doctor for treatment of her metastatic breast cancer. The trial court denied American Investors's motion for summary judgment and partially granted Butler's motion for summary judgment because the insurance-policy exclusion dealing generally with experimental treatment was ambiguous and because American Investors had not relied on that exclusion. The jury returned a verdict in favor of Butler in the amount of $97,813.58, and judgment was entered in that amount plus a twelve-percent statutory penalty, prejudgment interest, costs, and attorney's fees. American Investors brings this appeal, claiming that the trial court erred in granting summary judgment to Butler and in denying its motions for directed verdict and for judgment notwithstanding the verdict. We affirm on both points.

In April 1998, while insured under a health-insurance policy issued by American Investors, Butler, age 35, was diagnosed with breast cancer. Following surgery for removal of the breast cancer, Butler received standard-dose chemotherapy and radiation treatment. Butler consulted with Dr. William Walsh, an oncologist, who

advocated that Butler also undergo HDC because the surgery indicated that she had metastatic cancer in five of her lymph nodes. In June 1998, a request for preauthorization for the HDC procedure was first submitted to American Investors. As required by the policy, Dr. Walsh forwarded information to American Investors informing them that Butler met each of the criteria necessary for preauthorization of HDC and that the procedure was medically necessary. Dr. Irvin Fleming and Dr. Christine Mroz also wrote letters to American Investors recommending HDC for Butler based on her disease characteristics. The HDC procedure was to begin in July 1998.

After obtaining independent reviews from two other medical oncologists, Dr. Joyce O'Shaughnessy and Dr. Christopher Desch, in October 1998, American Investors denied preauthorization for the procedure by letter dated November 4, 1998, stating that the medical data did not suggest that HDC was more beneficial than standard treatment. Butler underwent the HDC procedure in November and December 1998, despite American Investors's denial of authorization, and filed suit to recover her medical expenses in the amount of $95,264.58. American Investors filed a motion for summary judgment, claiming that the policy provided no coverage for HDC in Butler's case. The trial court denied this motion for summary judgment, but partially granted Butler's motion for summary judgment, finding that language contained in a policy exclusion regarding experimental or investigational treatment was ambiguous. Further, the trial court found that American Investors did not rely on this exclusion in denying coverage. The jury returned a verdict in favor of Butler in the amount of $97,813.58, and the trial court entered judgment in this amount, plus a twelve-percent statutory penalty of $11,737.63, prejudgment interest of $11,673.31, costs of $5,928.61, and attorney's fees of $36,000. American Investors brings this appeal from the judgment.

■■ American Investors first argues that the trial court erred in granting summary judgment to Butler on the basis that the policy exclusion for experimental treatment was ambiguous and unenforceable. Summary judgment is to be granted by the trial court only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Stockton v. Sentry Ins.*, 337 Ark. 507, 989 S.W.2d 914 (1999). In reviewing a grant of summary judgment, an appellate court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Id.*

The trial court granted partial summary judgment to Butler, finding that the exclusion in the policy for experimental treatment did not apply as it was ambiguous, and that American Investors did not rely on that exclusion at the time of denial of Butler's claim. The relevant provision of this exclusion is as follows:

> *Experimental or Investigational Treatment.* Services and supplies that are, in [o]ur judgment, experimental or investigational for the diagnosis of the Insured Person being treated are excluded. Also excluded are services and supplies which support or are performed in connection with the experimental or investigational procedure. We shall have full discretion to determine whether services and supplies are experimental or investigational.

This provision further clarifies when a medical treatment may be deemed experimental or investigational, and in particular, states that a medical treatment that is the subject of ongoing phase I, II, or III clinical trials or is otherwise under study to determine its efficacy, as compared with a standard means of treatment, may be found to be experimental at American Investors's discretion. The procedure at issue in this case, HDC, was the subject of phase III trials for breast cancer at Butler's stage of development, and the trial court found that this procedure would be experimental under this provision, if it applied. However, the trial court found that the phrase "experimental or investigational for the diagnosis of the Insured Person" was ambiguous in that it was not clear whether "for the diagnosis" modified experimental, investigational, or both. Following the rule of insurance contract construction that requires the court to resolve ambiguities in the policy in favor of the insured, the trial court found that "for the diagnosis" modified experimental and investigational, and because the procedure at issue was for the treatment, not the diagnosis, of the insured, found that this provision did not apply in this case.

American Investors argues that this provision is not ambiguous, and we agree. The construction and legal effect of a written contract is a matter to be determined by the court, not the jury, except when the meaning of the language depends upon disputed extrinsic evidence. *Smith v. Prudential Property & Cas. Ins.*, 340 Ark. 225, 10 S.W.3d 846 (2000). Language is ambiguous when there is doubt or uncertainty as to its meaning or it is fairly susceptible of two interpretations. *Id.* Where the language in an insurance policy is ambiguous, the court must adopt the interpretation that is favorable to the insured. *Id.* However, language in an insurance

policy should be construed in its plain, ordinary, and popular sense. *Tri-State Ins. Co. v. Sing*, 41 Ark. App. 142, 850 S.W.2d 6 (1993).

■ Here, it seems clear by reading the entire provision, including the caption, "Experimental or Investigational Treatment," that "for the diagnosis" modifies only "investigational." Otherwise, only diagnostic services and supplies would be excluded under this clause, when it clearly pertains to both treatment and diagnosis. We will, however, affirm a ruling of the trial court, including a grant of summary judgment, where the trial court reached the correct result for the wrong reason. *Dunn v. Westbrook*, 334 Ark. 83, 971 S.W.2d 252 (1998) (holding that the trial court's grant of summary judgment was the right result, even though the trial court announced a wrong reason). The trial court also found that American Investors did not rely on this policy exclusion. American Investors did not mention this exclusion in its letter denying preauthorization or during the depositions of the employees responsible for making this decision. It was not until its motion for summary judgment that American Investors argued that this provision precluded coverage.

Moreover, another rule of contract construction supports the trial court's decision. Although the provision set out above generally excludes coverage for experimental treatment, another provision found in the exclusions section describes when the particular procedure, HDC, is excluded or covered under the policy. This HDC provision was the exclusion relied upon by American Investors when it denied coverage to Butler. The relevant portions of this provision are:

> *High Dose Chemotherapy.* High Dose Chemotherapy and all related procedures, including but not limited to autologous bone marrow transplantation, stem cell rescue or similar treatment or procedure designed to replace or rejuvenate bone marrow or peripheral blood cells. Other than for allogenic bone marrow transplantation, the only instances in which drugs, services or supplies associated with High Dose Chemotherapy and related procedures will be covered are in the following limited circumstances: . . .

> (6) For a diagnosis of metastatic breast cancer with (a) metastatic breast cancer patients who have not been previously treated with systemic Chemotherapy for metastatic disease; (b) metastatic breast cancer that is responding to primary systemic therapy; or (c) metastatic breast cancer that has relapsed after responding to first line treatment; and such patients have adequate marrow function with no evidence of marrow involvement in the disease;

In each of the nine limited cases outlined above, the following conditions must be satisfied in order for High Dose Chemotherapy to be a Covered Expense:

> (a) the patient's disease characteristics and treatment history suggest that the probability of achieving durable, complete remission are greater with High Dose Chemotherapy compared to standard treatment or conventional dose Chemotherapy; and

> (b) the patient does not have a concurrent condition which would seriously jeopardize the achievement of a durable, complete remission with High Dose Chemotherapy.

 The applicable rule of contract construction states that where two provisions of a contract conflict, the specific provision controls over a more general provision, as it is assumed that the specific provision expresses the parties' intent. *English v. Shelby*, 116 Ark. 212, 172 S.W. 817 (1915); *Mutual Reserve Fund Life Ass'n v. Minehart*, 72 Ark. 630, 83 S.W.323 (1904). As the court noted in interpreting an exclusion to an insurance policy in *Home Mutual Fire Insurance Company v. Jones*, 63 Ark. App. 221, 229, 977 S.W.2d 12, 16 (1998), "it would be incongruous for an insurer to plainly include a risk only to exclude it a few paragraphs later." However, another rule of contract construction provides that a court should not give effect to one clause of a contract to the exclusion of another, even if they seem conflicting, if the court can adopt an interpretation that reconciles the various clauses. *Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998). The object is to ascertain the intention of the parties from the entire context of the agreement. *Id.* Also, if there is an ambiguity in the contract, the court should give considerable weight to how the parties themselves construe it, as evidenced by subsequent statements, acts, and conduct. *Id.*

 In this case, one provision of the policy broadly excludes all experimental treatment, while another provision addresses a specific procedure and describes the particular circumstances in which the procedure may be covered under the policy. The interpretation that gives effect to both clauses is that the procedure at issue, while it could be experimental, is a covered expense if certain conditions are met. This interpretation of the policy is also supported by the actions of American Investors. The deposition of Randy Coleman, the president of American Investors, showed that American Investors had granted another preauthorization request for HDC in a breast cancer case in the recent past. In addition, as

noted by the trial court, American Investors did not argue that Butler's claim was precluded by the experimental exclusion until its motion for summary judgment. In fact, Coleman stated in his deposition that his reason for denying coverage in this case was that Butler did not have metastatic cancer as required by the policy. Thus, the specific language governing HDC, the actions of American Investors in relation to other HDC claims, and American Investors's reason for denying Butler's claim are indicative of the intent of American Investors that HDC be a covered procedure as long as the conditions listed in the policy are met. Thus, we conclude it was not error for the trial court to grant summary judgment as to the experimental provision of the policy, as the rules of contract construction support the decision that this provision did not apply in this case.

■ American Investors next argues that the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict, in that the jury verdict is not supported by substantial evidence and it is entitled to judgment as a matter of law. The standard of review for the denial of a directed-verdict motion and a motion for judgment notwithstanding the verdict is whether there is substantial evidence to support the jury's verdict, reviewing the evidence and all reasonable inferences therefrom in the light most favorable to the party on whose behalf judgment was entered. *Anselmo v. Tuck*, 325 Ark. 211, 924 S.W.2d 798 (1996). Substantial evidence is that evidence which is beyond mere suspicion or conjecture and which is of sufficient force and character that it, with reasonable certainty and precision, compels a conclusion of the matter one way or another. *Id.*

There were two issues that the trial court found to be material issues of fact and the jury was instructed to focus on these issues and answer two interrogatories to decide if American Investors proved the two issues by a preponderance of the evidence. The two issues were (1) whether a diagnosis of metastatic cancer had been made, and (2) whether Butler's disease and treatment characteristics suggested that the probability of achieving remission was greater with HDC than with standard treatment or conventional-dose chemotherapy. The jury found that American Investors did not prove by a preponderance of the evidence that Butler was not diagnosed with metastatic cancer, or that Butler's disease and treatment characteristics did not suggest a greater probability of remission with HDC than with standard treatment.

■ Regarding the first issue, American Investors argues that there was not substantial evidence to support the jury's verdict on whether Butler was diagnosed with metastatic cancer because at the time approval for HDC treatment was sought, Butler was cancer-free. Dr. Walsh and Dr. Mroz both testified that Butler was diagnosed with metastatic breast cancer, as the cancer had spread to five of her lymph nodes. The pathology report of these lymph nodes indicates this fact. American Investors relies on a bone-marrow study, CT scans, and ultrasounds performed by Butler's physicians after her operation that indicated an absence of cancer in support of their argument that Butler was not diagnosed with metastatic cancer. However, the policy does not state when or how the diagnosis of metastatic cancer should be made. Given the testimony of Dr. Walsh and Dr. Mroz, two experts in the area of breast cancer, that they considered Butler to have been diagnosed with metastatic cancer, there is substantial evidence to support the jury's verdict that American Investors did not prove by a preponderance of the evidence that Butler was not diagnosed with metastatic cancer.

■ ■ American Investors also argues that there was not substantial evidence to support the jury's finding regarding the probability of Butler achieving a greater remission with HDC than with conventional chemotherapy. Dr. Walsh stated that HDC was of great benefit and was medically necessary for Butler, and that, given Butler's lymph node involvement, HDC was a reasonable medical alternative and would "certainly prolong survival." Also, Dr. Mroz testified that with the aggressive nature of Butler's tumor and her young age, HDC would offer a much greater chance of survival and a normal life span than standard treatment would. Both Dr. Walsh and Dr. Mroz acknowledged that there were conflicting reports on the benefit of HDC as compared to conventional chemotherapy, and that further studies needed to be done. American Investors' two experts both stated that there was considerable controversy regarding the benefits of HDC for Butler's stage of breast cancer, and that the existing data was inconclusive where there was involvement of less than ten lymph nodes, as in Butler's case. American Investors points to these statements of their two experts and the testimony of Dr. Walsh and Dr. Mroz as support for their argument that there was no substantial evidence to support the jury's finding. However, there was testimony that there was a greater probability of achieving a complete remission with HDC than with standard treatment. The weight and value to be given the testimony of the witnesses lies within the exclusive province of the jury. *Anselmo v. Tuck, supra.* Thus, there was substantial evidence to support the jury's finding that American Investors did not prove by a preponderance of the

evidence that there was not a greater probability of Butler achieving a remission with HDC than with standard chemotherapy.

Affirmed.

BIRD and PITTMAN, JJ., agree.