SLIP OPINION



Cite as 2017 Ark. App. 315

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–16–910

|  |  |
|---|---|
| MIKE KRAFT | Opinion Delivered May 17, 2017 |
| APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CV-13-135] |
| V. |  |
| LIMESTONE PARTNERS, LLC | HONORABLE MIKE MURPHY, JUDGE |
| APPELLEE |  |
|  | REVERSED AND REMANDED |

## N. MARK KLAPPENBACH, Judge

Appellant Mike Kraft filed suit against appellee Limestone Partners, LLC (Limestone), of which he is a member, for breach of contract. Kraft alleged that Limestone had breached its operating agreement by failing to make guaranteed payments and provide promised benefits to him. The Faulkner County Circuit Court granted summary judgment to Limestone and dismissed Kraft's complaint. Kraft now appeals, and we reverse and remand.

Limestone was formed in 2004 by Kraft and Mike Coats for the purpose of opening a new restaurant. The operating agreement executed by the members in 2004 reflected that Coats owned a 39.5 percent interest, Kraft owned a 25.5 percent interest, and four other members owned smaller interests.[1] Section 6.11 of the operating agreement provides as follows:

---

[1]At the time of the lawsuit, Coats's share was 36 percent, and Kraft's share was 24 percent.

**6.11. <u>Guaranteed Payments to Members Participating in Management.</u>** At least initially, Mike Coats and Mike Kraft shall be the only Members actively participating in management of the Company. Mike Coats shall be paid a guaranteed annual payment, paid in equal monthly installments, of $95,000.00, and Mike Kraft shall be paid a guaranteed annual payment, paid in equal monthly installments, of $85,000.00. These guaranteed payments shall not be changed except upon unanimous consent of all of the Members, and shall be paid in accordance with the Company's payroll practices for its other employees. These Members participating in management shall also be provided with employee benefits made available by the Company to other employees. Additionally, Mike Coats and Mike Kraft shall also receive a combined monthly automobile allowance of $850.00 per month.

Kraft received guaranteed payments under this section until October 2012. The amount of the payments had changed multiple times, but every change was made with unanimous consent.[2] On October 1, 2012, Kraft was informed by Coats and two other members that he was being "terminated" from Limestone and would no longer receive guaranteed payments. Kraft refused to sign termination and severance agreements, as well as a voluntary disassociation and share-surrender agreement. He subsequently filed suit alleging that the cessation of his payments without his consent was a breach of the agreement.

Kraft moved for summary judgment, arguing that the unambiguous language of the operating agreement included no exceptions to the requirement of unanimous consent for any change to his guaranteed payments. In his attached affidavit, Kraft attested that he had participated in the management of Limestone from its formation until October 1, 2012, but he had never been an employee of Limestone or its managing member. In his deposition,

---

[2]The amount of Kraft's guaranteed annual payment at the time such payments stopped was $76,500.

SLIP OPINION

Coats said that Kraft was terminated from management because he had become unproductive. Coats said that both he and Kraft met with the attorney who drafted the operating agreement, and although Coats did not remember discussing the lines of section 6.11 with the attorney, the purpose of that provision was to protect him and Kraft because they were the ones behind the concept.

Limestone responded and filed a cross-motion for summary judgment, arguing that the guaranteed salary was available to Kraft only so long as he was "participating in management," as set forth in section 6.11, and that he was no longer participating in management because he had been terminated from his employment as authorized by section 9.2. Section 9.2 provides in part as follows:

> **9.2 Death; Other Incapacity of a Member; or Termination or Resignation of Employment.** Upon the death, Incapacity of a Member, or Termination or Resignation of Employment of a Member for any reason, the Company and the remaining Members shall have the continuing option thereafter to acquire the Membership Interest of the deceased, Incapacitated Member, or former employed Member, at the price and on the terms as the Company, the remaining Members, the formerly employed Member, and/or the personal representative, guardian or analogous fiduciary (the "Representative") of the deceased or Incapacitated Member, as the cae [sic] may be, may mutually agree . . . .

Kraft responded that section 9.2 was merely a buyout provision and did not apply to him because he was not an employee; instead, he provided services to the company in his capacity as a member. He argued that pursuant to the Internal Revenue Code, guaranteed payments are not a salary, and recipients of guaranteed payments are not employees. In a second affidavit, Kraft attested that no member had asserted a right to acquire his membership

SLIP OPINION

interest under section 9.2.

Following a hearing, the trial court granted Limestone's motion for summary judgment and denied Kraft's motion for summary judgment. The court's order stated in part that

> despite the lack of precision found in the operating agreement, the agreement clearly dealt with the rights, obligations and interest of "members," not employees.
>
> [Kraft] argues that [Limestone], specifically with regard to application of Section 9.2 of the operating agreement, is attempting to "mischaracterize" [Kraft's] status as that of an "employee" and thus subject to termination. But at the same time, [Kraft] apparently contends that there is no mechanism by which a "member" may be "terminated." That is not the case.
>
> Reading section 9.2 in the context of the full application of the agreement so that the terms and phrases can be reconciled, certainly the termination of a member acting in management is contemplated. Also, it does not seem to follow that the full agreement could be read to include a scenario by which guaranteed payments under section 6.11 could never end, as the member receiving them would never agree to their cessation – unless there was a mechanism to terminate a managing member under 9.2. The Court finds there was such a mechanism.

Ordinarily, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Abraham v. Beck*, 2015 Ark. 80, 456 S.W.3d 744. However, in a case where the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *Id.* As to issues of law presented, our review is de novo. *Id.*

SLIP OPINION

When a contract is free of ambiguity, its construction and legal effect are questions of law for the court to determine. *Shamburger v. Shamburger*, 2016 Ark. App. 57, 481 S.W.3d 448. When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id.* We must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *Spann v. Lovett & Co.*, 2012 Ark. App. 107, 389 S.W.3d 77. It is a well-settled rule that the intention of the parties to a contract is to be gathered, not from particular words and phrases, but from the whole context of the agreement. *Id.* On appeal from a trial court's determination of a purely legal issue, we must decide only if its interpretation of the law was correct, as we give no deference to the trial court's conclusion on a question of law. *Shamburger, supra.*

Kraft argues that the plain language of the operating agreement prohibits the cessation of his guaranteed payments without the unanimous consent of the members. He notes that section 6.11 uses the word "shall" in two places: "Kraft shall be paid a guaranteed annual payment," and "[t]hese guaranteed payments shall not be changed except upon unanimous consent of all of the Members." "Shall" is defined as "[h]as a duty to" or "is required to," and when used in a contract provision, we have held that it means that compliance with that provision is mandatory. *Shamburger*, 2016 Ark. App. 57, at 10, 481 S.W.3d at 454 (citing *Black's Law Dictionary* (10th ed. 2014)). Kraft contends that there are no provisions in the

SLIP OPINION

agreement that create an exception to the mandatory language of this provision. Limestone argues that other provisions of the agreement authorize Kraft's termination from management and, consequently, the termination of his salary.

Section 6.1, titled "Management Rights," provides in part that "[t]he Management and control of the business and affairs of the Company shall be vested in the Members, provided Mike Coats shall serve as the Managing Member with responsibility for management and control of the day-to-day operations of the Company. The Managing Member may be replaced by a Majority of the Members." Although Kraft was never the managing member, Limestone argues that a reasonable interpretation of the agreement supports the fact that the same majority could replace or remove another member of the company actively involved in its management. We do not find this argument persuasive. The plain language of the agreement contemplates only the replacement of the managing member, not the removal of any member who may be participating in management. Moreover, this section does not provide any authority for a majority of members to change the guaranteed payments of Kraft or Coats in disregard of the express terms of section 6.11 requiring unanimous consent.

Section 9.2 provides in part that

[u]pon the death, Incapacity of a Member, or Termination or Resignation of Employment of a Member for any reason, the Company and the remaining Members shall have the continuing option thereafter to acquire the Membership Interest of the deceased, Incapacitated Member, or former employed Member . . . .

Limestone argues that this provision reflects the parties' recognition that a member in the

SLIP OPINION

employment of the company could be terminated for any reason. Limestone contends that Kraft was fired from "actively participating in management" as set forth in section 6.11 and accordingly was no longer guaranteed the annual payments. Kraft maintains that section 9.2 is merely a buyout provision that does not apply to him because he was never an employee. He further claims that it does not authorize the termination of any member's right to participate in management. We agree with Kraft. Section 9 is titled "Disposition of Membership Interests." Limestone concedes that disposition of Kraft's interest is not an issue in this case, and Kraft remains a member of the company. Although section 9.2 refers to the fact that a member's employment can be terminated, it does not address the removal of members from management or the process by which members can be terminated. That process is addressed by section 10, which is silent as to how a member can be involuntarily removed absent bankruptcy, death, or an adjudication of incompetence.

Furthermore, section 6.11 does not tie Kraft's rights under that section to employment by the company. In fact, Kraft was not treated as an employee of the company. No Social Security, Medicare, or state income taxes were withheld from his payments as is the custom with an employee. Kraft is a member of the LLC, and his payments were guaranteed payments much like guaranteed payments to a partner in a partnership.

Arkansas law requires that different clauses of a contract must be read together and the contract construed so that all of its parts harmonize, if that is possible; giving effect to one clause to the exclusion of another on the same subject is erroneous. *Asbury Auto. Used Car*

7

SLIP OPINION

*Ctr., L.L.C. v. Brosh*, 364 Ark. 386, 220 S.W.3d 637 (2005).  The provisions relied on by Limestone, however, do not apply to the same subject as section 6.11.  Sections 6.1 and 9.2 are not applicable to Kraft's circumstances and have no bearing on his rights under section 6.11.  As Kraft notes, Limestone's interpretation would render the unanimous-consent requirement of section 6.11 meaningless by allowing a majority vote to exclude Kraft or Coats from management, change their guaranteed payments, and force a sale of their membership interests under section 9.2.

The plain language of the agreement provides in mandatory terms that Kraft's guaranteed payments cannot be changed without unanimous consent.  A court cannot make a contract for the parties but can only construe and enforce the contract that they have made.  *Crittenden Cty. v. Davis*, 2013 Ark. App. 655, 430 S.W.3d 172.  We will not read into the contract words that are not there, and we will not rewrite a contract or approve additional terms that would, in effect, enforce a contract that the parties might have made, but did not make.  *Id*.  Accordingly, we reverse and remand the trial court's order granting summary judgment to Limestone.

Reversed and remanded.

BROWN, J., agrees.

WHITEAKER, J., concurs.

**PHILLIP T. WHITEAKER, Judge, concurring.**  I agree with the majority opinion that this case should be reversed and remanded. I write separately, however, because I would

do so for a different reason. As the majority notes, the parties in this case filed cross–motions for summary judgment. The majority also notes that, generally speaking, when parties file cross–motions for summary judgment, they "essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case." *Abraham v. Beck*, 2015 Ark. 80, 456 S.W.3d 744. This court has stated, however, that the fact that both parties have moved for summary judgment does not establish that there is no issue of fact. *Cranfill v. Union Planters Bank, N.A.*, 86 Ark. App. 1, 17, 158 S.W.3d 703, 713 (2004) (citing *Wood v. Lathrop*, 249 Ark. 376, 459 S.W.2d 808 (1970)). In this case, I believe there are questions of fact to be resolved.

Specifically, I would hold that there are conflicting facts as to whether appellant Mike Kraft was a "manager" or an "employee" of Limestone. Kraft averred repeatedly that he was not an employee, but Limestone argued otherwise. Although Mike Coats testified in his deposition that he did not maintain "employee or personnel files" on himself or Kraft, Limestone argued in its briefs to the circuit court that "by the *express terms* of the operating agreement, both Mike Coats *and Mike Kraft are deemed employees*."[1] (Emphasis added.) Even the circuit court noted Kraft's argument that Limestone was trying to "mischaracterize" him as an employee.

---

[1]This was based on the language in paragraph 6.11 that the guaranteed annual payments "shall be paid in accordance with the Company's payroll practices for *its other employees*" and that members participating in management "shall also be provided with employee benefits made available by the Company *to other employees*." (Emphasis added.)

SLIP OPINION

This court has stated that if conflicting testimony appears in the affidavits and depositions that are filed, summary judgment may be inappropriate as the issues involved will depend on the credibility of the witnesses. *Clark v. Progressive Ins. Co.*, 64 Ark. App. 313, 321, 984 S.W.2d 54, 59 (1998) (citing 10A Charles Allan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2726 at 440–47 (1998)). Because there was conflicting testimony about Kraft's status as a manager or an employee in the affidavits and depositions, and because such status had some bearing on whether or how Limestone could terminate Kraft, I would reverse and remand for the circuit court to resolve that material question of fact.

*Lax, Vaughan, Fortson, Rowe & Threet, P.A.*, by: *Grant E. Fortson*, for appellant.

*Adkisson & Wilcox, LLP*, by: *William C. Adkisson*, for appellee.