Cite as 2020 Ark. App. 292

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-18-1033

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF CHARLES E. COOK, DECEASED<br><br>JARED BROOKS AND CHARLOTTE SMITH<br><br>APPELLANTS<br><br><br>V.<br><br>AMY WILLHITE AND THE ESTATE OF CHARLES E. COOK<br><br>APPELLEES | **Opinion Delivered:** May 6, 2020<br><br>APPEAL FROM THE LAWRENCE COUNTY CIRCUIT COURT [NO. 38PR-17-49]<br><br><br>HONORABLE KEVIN KING, JUDGE<br><br>REVERSED AND REMANDED |

**MIKE MURPHY, Judge**

Appellants Jared Brooks and Charlotte Smith appeal from the Lawrence County Circuit Court's order finding that an LLC operating agreement between Brooks and Charles Cook, deceased, lacked sufficient consideration to transfer Cook's LLC interest to Brooks without paying a buyout to Cook's estate. Brooks and Smith also appeal from the circuit court's order confirming jurisdiction. Finding no error in the circuit court's determination of its jurisdiction, we reverse and remand the order determining Cook's LLC interest to be an asset of his estate.

Charles Cook died on April 23, 2017. At the time of his death, he had three surviving children: Charlotte Smith (Brooks's mother), Crista Bowker, and Amy Willhite. Also at the time of his death, Cook had a 50 percent interest in Cook's Towing and Recovery, LLC.

In December 2014, Cook and his grandson Brooks created the LLC pursuant to a seven-page operating agreement that was filed with the Arkansas Secretary of State on December 23, 2014. Brooks and Cook, as the only members, each owned a 50 percent interest in the LLC. A provision in the operating agreement provided that upon the death, incompetency, or bankruptcy of either member, that member's ownership, interest, and income from the LLC would immediately transfer to the surviving member, without any buy-out required. It also stated that a member could sell or transfer his interest with the consent of the other member but granted a right of first refusal.

On May 3, 2017, Brooks filed a petition to open the estate and for the appointment of a personal representative. The petition listed Brooks and Cook's three daughters as surviving heirs and devisees pursuant to a purported holographic will, which Brooks alleged to be Cook's last will and testament. On August 21, the circuit court entered an order appointing Brooks personal representative and finding that the holographic will was not valid. Based on this finding, the court ordered that the assets of Cook's estate pass by intestate succession to his three daughters.

On January 29, 2018, Brooks petitioned the court to admit two documents purported to be holographic wills found in Cook's safe. He also petitioned to be released as personal representative because he was listed as a beneficiary in the purported wills. The court released him as personal representative and appointed D. Clay Sloan for the position. The court also appointed Sloan to serve as the estate's legal counsel. On April 9, after a hearing, the court entered an order disallowing the admission of the holographic wills because the documents lacked clarity and the necessary testamentary intent.

Meanwhile, in November 2017, Willhite had filed a motion to determine that Cook's interest in Cook's Towing and Recovery be considered an asset of the estate and did not pass automatically to Brooks. At the April 9 hearing, the court directed the parties to submit briefs on this issue. Brooks's brief first asserted that the probate court lacked jurisdiction to address the matter because the dispute concerned property rights and did not involve a beneficiary or personal representative of the decedent's estate. He also asserted, among other things, that the operating agreement is an independent, valid, and binding contract that clearly stated the intent of the decedent to have his interest in the LLC transfer upon his death to the surviving member. Charlotte Smith filed a statement that she had no objection to the LLC being vested completely in Brooks.

Willhite's trial brief noted that the assets of the LLC include vehicles used in the towing business as well as Cook's personal residence. She attacked the validity of the creation of the LLC, arguing there is no valid business reason for Cook to have transferred his personal residence to the LLC. She further argued that there are no dates on the pages of the agreement, no page numbers, no initials of the signatories on each page, and no verification by a witness or notary. Thus, she claimed there is no proof that Cook agreed to the language transferring his interest to Brooks. Lastly, she claimed the transfer-upon-death provision in the operating agreement is an attempt to accomplish a testamentary disposition in an unverified and unwitnessed contract.

On August 31, the circuit court entered two orders regarding its determination on jurisdiction and the transfer of the LLC interest. First, the court found that it had jurisdiction over the parties and issues presented. It noted that Brooks was a party to the case since it

had been opened and that he had been actively involved in actions taken on behalf of the estate until Sloan replaced him as personal representative. It further noted that Brooks only identified himself as a "stranger" to the case after the court issued a decision as to the ownership of the LLC interest by the estate.

Concerning the ownership of the LLC interest, the court's order directed that Cook's 50 percent interest in the LLC be considered an asset of his estate. The order found that the transfer of Cook's interest by virtue of the operating agreement was contractual in nature and not a testamentary transfer; however, the court found the contract failed due to lack of consideration. Because the transfer provision lacked consideration, the court severed the transfer provision from the remainder of the operating agreement per the severability clause in the agreement. The order further found that Brooks had a contractual right under the LLC agreement to purchase Cook's interest from the estate as if Cook were selling his interest to a third party under the right of first refusal clause. Brooks and Smith (collectively referred to as "appellants") now timely appeal.

We will address the appellants' arguments out of order. Even though the appellants first contend that the circuit court erred in finding that the operating agreement did not transfer Cook's interest in the LLC to Brooks upon Cook's death, because they also allege a jurisdictional issue, we will discuss the jurisdictional issue first.

The appellants contend that the circuit court did not have jurisdiction to determine the ownership of the LLC because Brooks and the LLC are strangers to the estate. This court has defined a "stranger" to the estate as one who is not an heir, distributee, or devisee of the decedent, or a beneficiary of or claimant against the decedent's estate. *Smith v. Smith*,

4

338 Ark. 526, 529, 998 S.W.2d 745, 747 (1999). Brooks acted on behalf of the LLC as a claimant against the estate. Additionally, Arkansas Code Annotated section 28-1-104 (Repl. 2012) defines probate court jurisdiction and states that the circuit court shall have jurisdiction over "[t]he administration, settlement, and distribution of estates of decedents." The question before the circuit court was whether the operating agreement signed by both Cook and Brooks authorized transfer of Cook's LLC interest outside of the estate to Brooks or whether Cook's interest should transfer to his estate. Because the question before the court involved the administration, settlement, and distribution of Cook's estate, namely how his interest in the LLC will be distributed, we find no error in the circuit court's determination of its jurisdiction.

Next, we will discuss the appellants' argument that the circuit court erred in finding that the operating agreement did not transfer Cook's interest in the LLC to Brooks upon Cook's death. When a contract is free of ambiguity, its construction and legal effect are questions of law for the court to determine. *Kraft v. Limestone Partners, LLC*, 2017 Ark. App. 315, at 5, 522 S.W.3d 150, 153. When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id*. We must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *Id*. It is a well-settled rule that the intention of the parties to a contract is to be gathered, not from particular words and phrases, but from the whole context of the agreement. *Id*. On appeal from a circuit court's determination of

5

a purely legal issue, we must decide only if its interpretation of the law was correct, as we give no deference to the circuit court's conclusion on a question of law. *Id.*

Arkansas Limited Liability Companies are authorized by the Small Business Entity Pass Through Act. *See* Ark. Code Ann. §§ 4-32-101 et. seq. (Repl. 2016 & Supp. 2019). The Act defines an "operating agreement" as the written agreement which shall be entered into among all of the members as to the conduct of the business and affairs of a limited liability company. Ark. Code Ann. § 4-32-102(11). Our statutes do not indicate any specific requirements or contents of the written agreement, itself. The Act requires certain information be kept in writing, but states that it shall merely be kept at the LLC's "principal place of business." Ark. Code Ann. § 4-32-405.

A person ceases to be a member of a limited liability company upon the occurrence of a member's death unless otherwise provided in writing in an operating agreement. Ark. Code Ann. § 4-32-802. The operating agreement entered into by Brooks and Cook specifically addresses what should happen in the event of the death of a member. Section 8.4 provides,

> On the death, adjudicated incompetence, or bankruptcy of a Member, the living member shall be the sole successor in interest to the deceased Member. Upon the death, incompetency, or bankruptcy of Jared Brooks, his ownership, interest, and income from the Company shall immediately transfer to Charles Cook. *Upon the death, incompetency, or bankruptcy of Charles Cook, his ownership, interest, and income from the Company shall immediately transfer to Jared Brooks.* In the event there is any legal contest to this automatic transfer of ownership, any other successors in interest to any deceased, incompetent, or insolvent Member (whether an estate, bankruptcy trustee, or otherwise) will receive only the economic right to receive distributions whenever made by the Company and the deceased, incompetent, or insolvent Member's allocable share of taxable income, gain, loss, deduction, and credit (the "Economic Rights"). (Emphasis added)

Additionally, section 8.7 states,

6

[U]pon the transfer of the interest in the Company by any deceased, incompetent, or insolvent Member, *there shall be no buy out required to accomplish the transfer upon death/incompetency/insolvency of either Charles Cook or Jared [Brooks]*. All interest, shares, profits, and ownership shall automatically transfer to the remaining competent/solvent party. (Emphasis added)

The language clearly and unambiguously establishes that Cook and Brooks intended for their ownership, interest, and income from the LLC to pass automatically and immediately to the surviving member in the event of either of their deaths. The circuit court properly acknowledged that this was a contractual transfer. However, the court erroneously found that this contractual transfer lacked consideration and could not be properly effectuated.

Consideration is any benefit conferred or agreed to be conferred upon a promisor to which he is not lawfully entitled, or any prejudice suffered or agreed to be suffered by a promisee, other than that which he is lawfully bound to suffer. *Trakru v. Mathews*, 2014 Ark. App. 154, at 8, 434 S.W.3d 10, 16. Mutual promises constitute consideration, each for the other. *Essential Accounting Sys., Inc. v. Dewberry*, 2013 Ark. App. 388, at 6, 428 S.W.3d 613, 617.

The operating agreement between Cook and Brooks delineated multiple mutual promises and obligations including both contributing initial capital to the LLC and both agreeing to operate and manage the company. Also, the provision directing that the interest of a member upon his death shall immediately pass to the surviving member applied to both Cook and Brooks. Both parties gave up the rights for their respective estates and heirs to receive a buy-out from the other party to effectuate the transfer of interest in the event of

death, incompetency, or bankruptcy. As such, their mutual promises and obligations supplied the necessary consideration to form a valid, enforceable contract.

Appellees maintain that the issue of whether there was adequate consideration should be analyzed at the time of death. They assert that the consideration given for the creation of the LLC in the operating agreement should not be the same consideration to support the transfer that would only occur upon death of one of the parties. However, this ignores the contract-construction principles set out above. Our principles of construction require that the terms of the contract be read as a whole. When this is done, it is evident that Cook and Brooks entered into the operating agreement with the intention that the LLC interest transfer to the surviving member upon either of their deaths. Thus, because Cook and Brooks created an LLC under the authorizing statutes and drafted an operating agreement that included terms that clearly intended a member's interest to pass to the surviving member upon either of their deaths, we hold that Cook's interest transferred upon his death to Brooks rather than to Cook's estate.

Reversed and remanded.

ABRAMSON and KLAPPENBACH, JJ., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor, Tasha C. Taylor*, and *Jennifer Williams Flinn*, for appellants.

*Snellgrove, Langley, Culpepper, Williams & Mullally*, by: *Todd Williams*, for separate appellee Amy Willhite.

*Sloan Law Firm*, by: *D. Clay Sloan*, for separate appellee Estate of Charles Cook.