Cite as 2022 Ark. App. 50

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-21-124

|  |  |
|---|---|
| GERALD T. (JERRY) SILZELL<br>APPELLANT<br><br>V.<br><br>SAMMY ANN SILZELL<br>APPELLEE | **Opinion Delivered** February 2, 2022<br><br>APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT<br>[NO. 03CV-19-264]<br><br>HONORABLE GORDON WEBB, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Jerry Silzell appeals a Baxter County Circuit Court judgment awarded to Sammy Silzell based on a breach of contract. In his appeal, he claims that the contract was neither valid nor enforceable. We affirm.

For purposes of this opinion, we set forth the following facts. Jerry and Sammy were married in the early seventies and divorced in July 1987. They reconciled just shortly after the divorce and began cohabitating. Initially, they resided in Sammy's home. Eventually, they built a house and resided together in the home until they separated again in October 2011. Despite this long-term cohabitation, they never remarried.

In contemplation of their separation, Jerry and Sammy had an attorney draft a written agreement. Pursuant to the agreement and for "valuable consideration," the parties agreed (1) that Jerry shall pay Sammy $3,000 a month for life or until Jerry's death; (2) that Jerry shall keep Sammy as a beneficiary on a $350,000 life insurance policy; (3) that Sammy shall

receive and that Jerry would transfer title to Sammy's 2007 GMC Yukon; (4) that Jerry shall pay Sammy's moving expenses from the present home to her new home; (5) that Sammy shall receive certain personal and household items; and (6) that Jerry would pay for the preparation of the agreement. Both parties signed the agreement at the attorney's office. Sammy subsequently moved out of the home.

Jerry performed his obligations under the agreement for approximately eight years. In July 2019, he ceased making the monthly payment under the agreement, claiming that his financial situation prevented him from continuing to perform under the agreement.

Sammy filed a breach-of-contract action. She alleged that Jerry had breached the contract by failing to make payments as required and requested specific performance.[1] When Jerry answered pleading affirmatively that the agreement was null and void because of lack of consideration, Sammy amended her complaint to allege that her main obligation under the contract was to surrender the joint residence to Jerry.

The parties proceeded to a bench trial where both Jerry and Sammy testified to the facts outlined above. Both parties testified to the terms of the written agreement, which was entered into evidence, and presented parol evidence as to the facts surrounding its inception. Sammy testified that she sold her home and contributed the sale proceeds of $167,000 to the building of the joint home. Jerry claimed the former home was marital, but no physical proof of ownership was presented. Ultimately, Jerry admitted that Sammy contributed

---

[1]The complaint also alleged that Jerry had failed to maintain the policy of insurance. The insurance policy was still in effect, and this allegation is not a part of the appeal.

financially to the construction of the joint home. He did, however, claim the joint home was titled in his name alone, but no deed was ever introduced to verify his claim.

Concerning their separation, Sammy testified that Jerry's infidelity caused a complete and final breakup and that she could no longer live with Jerry. While Jerry denied infidelity, he admitted that the accusation was the cause of the separation. Sammy then testified that they entered into an agreement because she needed separate accommodations. Jerry admitted staying in the joint home and that Sammy moved out of the residence into a place of her own. Jerry further admitted he had complied with all the terms of the agreement for eight years. He stated that he stopped paying the $3,000 a month in June 2019 because he encountered difficulty paying his financial obligations as a result of poor cattle sales and the market had turned in a bad direction. At the close of all the evidence, the trial court entered an order requiring Jerry to fulfill his obligations under the contract and awarding a judgment in favor of Sammy for any arrearages that had occurred.[2] Jerry now appeals.

Following a bench trial, our standard of review is whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *AgriFund, LLC v. Regions Bank*, 2020 Ark. 246, 602 S.W.3d 726. We view the evidence and all reasonable inferences arising therefrom in the light most favorable to the appellee. *Id.* Disputed facts and determinations of witness credibility are within the province of the trier of fact. *Id.* For questions of law, our review is de novo. *See Gulfco La., Inc. v. Brantley*, 2013 Ark. 367, at 10–11, 430 S.W.3d 7, 13.

---

[2]The judgment also included statutory interest of 6 percent on the arrearages.

Here, the court found that Sammy and Jerry had married, divorced, and then reconciled in a long-term cohabitation relationship. We conclude that these findings are not clearly erroneous. The court found that during the term of cohabitation, the couple lived together in Sammy's home until it was sold and that the proceeds of the sale went into the construction of a new joint home. The court further found that the parties lived together in the joint home until they decided to separate. While the parties presented competing testimony concerning their ownership interests, the trial court was required, as the trier of fact, to determine the credibility of witnesses and resolve conflicting testimony. *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001). On appeal, we will not disturb a trial court's resolution of disputed facts or determinations of credibility as these are within the province of the fact-finder. *See Reichert v. Colwell*, 2020 Ark. App. 466, 611 S.W.3d 503. Thus, we cannot say the trial court's finding in this regard was clearly erroneous.

Concerning the postseparation status of the parties, the court found that Jerry fulfilled all his obligations to Sammy as set forth in the agreement until he voluntarily ceased monthly payments due to financial difficulties. These facts are either undisputed or supported by Jerry's testimony at trial. As such, they are supported by the evidence and are not clearly erroneous. Again, we conclude that these findings are not clearly erroneous.

For his first point on appeal, Jerry argues that the trial court erred in awarding Sammy judgment because the agreement was void. He contends it lacked proper consideration as it did not explicitly require Sammy to do anything under the contract.

We begin our analysis by noting that the agreement between the parties expressly provided that "valuable consideration" was given for the inducement of its terms. When a

4

contract is free of ambiguity, its construction and legal effect are questions of law for the court to determine. *Kraft v. Limestone Partners, LLC*, 2017 Ark. App. 315, at 5, 522 S.W.3d 150, 153. When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id*. We must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *Id*. It is a well-settled rule that the intention of the parties to a contract is to be gathered, not from particular words and phrases, but from the whole context of the agreement. *Id*. However, we are permitted to look outside the contract to determine the actual intent and conduct of the parties when an ambiguity exists. *Parker v. Parker*, 2019 Ark. App. 607, at 9, 591 S.W.3d 818, 823. And courts may also acquaint themselves with, and consider circumstances existing at the time of, the execution of a contract and the situation of the parties who made it. *Rockefeller v. Rockefeller*, 335 Ark. 145, 158, 980 S.W.2d 255, 261 (1998).

Below, the court found that the agreement was a valid, binding contract and that valid consideration had been given. In so holding, the trial court found that the agreement was prepared in an attempt to document what Jerry was willing to give to Sammy in exchange for her moving out and surrendering any interest she had in the joint home. Viewing the evidence and all reasonable inferences arising therefrom in the light most favorable to Sammy as we must do under our standard of review, we cannot conclude that the trial court erred in making this determination.

Jerry next argues that the consideration given was so insufficient and inadequate as to render the agreement unconscionable. He argues that the agreement obligated him to pay hundreds of thousands of dollars over a lifetime in exchange for Sammy's agreement to move from a home to which she had no legal claim.

In assessing the unconscionability of a contract, we review the totality of the circumstances, including two important considerations: whether there is a gross inequality of bargaining power between the parties to the contract and whether the aggrieved party was made aware of and comprehended the provision in question. *State v. R & A Inv. Co.*, 336 Ark. 289, 985 S.W.2d 299 (1999).

Here, the trial court found that the agreement was not unconscionable because Jerry voluntarily agreed to the terms of the agreement in order to gain the new jointly owned home free of any claim from her. Under our system of law, parties are free to make contracts based on whatever terms and conditions they agree on, provided it is not illegal or tainted with some infirmity such as fraud, overreaching, or the like. *Hancock v. Tri-State Ins. Co.*, 43 Ark. App. 47, 858 S.W.2d 152 (1993).

We are not convinced of a clear error on the issue of unconscionability. Jerry and Sammy entered this agreement in contemplation of the breakup of a romantic relationship that spanned four decades. They signed the agreement at an attorney's office, and Jerry paid for the agreement to be drafted. Jerry was aware of its terms and, in fact, fulfilled his obligations for approximately eight years. He even testified that he would have continued to pay on the agreement if he had not encountered some financial hardships. Given the

totality of the circumstances, the trial court was correct in finding that the agreement was not unconscionable.

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Jeremy B. Lowrey*, for appellant.

*Taylor & Taylor Law Firm, P.A.*, by: *Tory H. Lewis*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellee.